Mr. Herman. May it please the court. This case involves a plain error in the application of the 2016 illegal re-entry guidelines. The government doesn't dispute that an error occurred and that it was clear and obvious under case law and under the facts as set out in the PSR. So just briefly the error was in the offense level enhancement based on a prior conviction. The prior conviction conduct took place before the first order of deportation but the conviction after the first order of deportation so it simply fell outside of the ambit of that applicable guideline. The question that the government has disputed is whether that affected this defendant's substantial rights. And just as a beginning point, whether under this court's prior law or under Melino Martinez itself, the degree of the disparity in this case shows that the error affected substantial rights. The erroneous range that the district court actually used was 30 to 37 months. The correct range was actually 10 to 16 months. So instead of a seven-month upward departure, the district court was actually imposing something more like a 28-month upward departure without being aware of that. But we know of course that just the degree is not sufficient and under Melino Martinez, if the district court made clear that the judge based the sentence on factors independent of the guidelines and that he thought the sentence was appropriate irrespective of that guideline range, then the error would not affect substantial rights. In this case, of course, that exception didn't occur. The judge in this case began his explanation by citing the incorrect guideline range, by citing the correct criminal history category and the erroneous offense level. He adopted that calculation and the PSR. He then moved to a guideline-based departure under 4A1.3. He cited the two factors, which is the likelihood of recidivism and the severity of the prior offense, making the criminal history category insufficient. He followed then the procedure set out in 4A1.3 and just moved up one criminal history category. He then said, I find that a sentence within these guidelines satisfies the Section 3553 factors. So what do we do with his statement that I think you need more than 41 months because that didn't work before or some words to that effect? I think that's the statement that shows that the judge considered a number of factors. And it's best to review that type of factor in light of three cases that this Court has set out, Winkerink, Sanchez-Arvizu, and Perez-Matteo. Winkerink came out right after Molina-Martinez. And in that case, this Court found that there was still an effect on substantial rights, even though the district court there had done both an upward variance and departure justification. And the Court looked to the number of 3553A factors that were cited and still said that the district court had to consider the degree of variance, even when it was doing an upward variance based on a number of different factors, that that dependence on the degree of variance showed that the guidelines were still the basis for the sentence. And specifically, when it comes to an upward departure, the Court was very sure that the upward departure pursuant to the guidelines is undoubtedly based on the guidelines. I think the clearest case to respond to your question is Perez-Matteo, because there, the district court did discuss the defendant's criminal history and prior deportations. And the government said, given the degree of focus on those things, it's clear that the court would not impose a different sentence. But this Court responded, those statements plausibly indicate that the district court's sentence may have been influenced by an addition to the guideline range, but they do not indicate that the district court sentenced Perez-Matteo based on factors solely independent of the guidelines. So what's wrong with the middle ground of asking the district court, what do you mean, the suggestion that was made? And then you responded in a letter, as I recall, that you didn't seem to like that idea. So tell me about that. Yes, Your Honor. So first of all, this idea of a limited remand came up in the court there cited to the Seventh Circuit's opinion in Curry. But in our 28J letter, I brought out two cases, or one case, Williams in particular, but also Adams, that discuss whether a limited remand is appropriate in a guidelines error calculation situation. And the Seventh Circuit made it very clear that their normal practice, they presume that a guidelines error needs to go back for a full remand. Why? Because of exactly the reasons that the Supreme Court had highlighted in Molina-Martinez and Pew and in other cases. And that is the centrality of the guidelines to actually pegging the sentence at a particular number of months. So that makes a fair amount of sense where, I mean, I realize that this is not a one-size-fit-all remedy. And it seems to say that, I mean, Molina-Martinez itself supports you in the idea that these guidelines-based errors are going to satisfy the third and fourth prongs of the plain error standards. So I understand the thrust of that. The thing that seems odd is that where you have a district court sentence that specifically says, look, I think I have to give you more than 41 months because obviously 41 months didn't deter you from the unlawful conduct, and then goes through the guidelines range. That seems to be the heartland of what Molina-Martinez's limited remand was supposed to get at. And I don't see how it would hurt your client just to ask the district court, what do you think about that? I guess there are two things. One, in this case, there were actually two cases. In the first sentencing hearing that got continued, the judge said, in these types of cases, meaning these types of cases where the 2016 versus 2015 guideline for recidivist illegal reentrance had changed the range, he usually went to 30 months. He noted the 41-month sentence. But then he said, there are a number of things that go into, a number of factors that go into the sentence. And he didn't prejudge it. So he indicated that it wasn't just the 41 months. It wasn't just the graduation. It was a number of different factors. And that's at 128 and 129. But in terms of the defendant's interests, the key part with the guidelines there, and this is what the Seventh Circuit focused in on in Adams and in Williams, is that the defendant at that point is facing a guideline range where, regardless of what the basis of the departure was or the variance, the whole scale has now been changed. The whole basis of calibration for what an appropriate variance or what an appropriate departure would be has changed. So in this case, we have the judge thinking a seven-month difference is sufficient, whereas the 28-month difference might not be. But certainly from the defendant's perspective, it's a different argument to make, a whole different set of ranges in justifying that degree. So let me ask you about that, because one aspect of sentencing that's very crucial is everybody's there, the prosecutor, the defense attorney, and the defendant. And the defense attorney and say this or that as they're sitting there. What would the physics of a limited remand under Molina-Martinez look like? And how would that benefit or not benefit the defendant and the U.S.? Certainly. I think the limited remand depends on what this Court decides to do. And that's why I raised the Adams case as well. So the Seventh Circuit in Curry essentially did what this Court then subsequently did in Gomez, which is send a saying, what would you want to do in light of the error that we now have? And your limited remand told the Court in Gomez, if you wish to resentence, go ahead and do it. And in fact, in that case, that's what the district court did. It lowered the sentence from 800, no, 650 to 480 months. In the Seventh Circuit in Adams, the Court there adopted what they called a limited remand, but their worry was really a reopening of the sentencing to deal with issues that hadn't been dealt with before, other guideline enhancements and things of that nature. But the Seventh Circuit said it was not going to prescribe the procedures that would be needed. It would leave it to the district court to make the determination. In a case like this, this defendant has some key interests in actually being there under 3553C, under Rule 43, under just the right to be present at sentencing. And that's again constitutional right. And it's again because of the degree of the disparity. The judge here knew that he was imposing an upward departure. He knew what the factors were. But again, we've changed the entire scale with this guideline difference based on the change in the guidelines themselves. Nobody knew of that error. So neither defendant nor his counsel knew how to make arguments that might not have seemed plausible if all we're talking about is a seven-month difference. But when we're talking about a 28-month difference, those same arguments that might not have seemed plausible before might now carry much greater weight with the district court when it knows how much more sentence it's imposing under that guideline regime. But I admit . . . Here's what I don't get. Suppose we order a limited remand and we send it back to the district court with this question, as in Curry or Adams or whichever. Can't you just make every single argument you just made to us to the district court and say, look, in this case, given the size of the disparity, the present, you know, the 3553C, etc., etc., etc., we urge the court, please let's have a full, you know, let's bring the defendant in, let's have a full allocution, let's do the whole thing all over again. And if the district court says, no, I really meant what I said, I think I had to do more than 41 months because of the recidivism problem, then you lose, obviously, but you had a chance to make . . . It's not like you don't get a chance to tell the district court, who's ultimately in charge of all of this anyway, exactly what you just told us. So that's what I mean when I say I'm not sure I understand how it would prejudice the defendant. First of all, I think it would have to be clear that we would have that opportunity to make those arguments. There have been cases not cited in our briefs. Otis Jackson was a very recent case where a similar type of question was sent back to the district court and the district court simply issued an order. And there wasn't a hearing and there wasn't essentially a notice of an opportunity to make arguments, although we made arguments subsequent to that in that case. So that would need to be clear that we would have the right to make those arguments. But I think the more fundamental problem is under 3553C and the defendant's right to be present. This defendant was very active in his sentencing hearings, for better or worse. And I'm just wondering because Rule 43 says he gets to be present, and then there's exceptions. And the only exception that could arguably apply here, as I read it, is 43B.3, conference or hearing on a legal question. The proceeding involves only a conference or hearing on a question of law. That doesn't sound like the judge just sitting in his or her office writing an order. That sounds like you and the prosecutor are there talking, maybe not with the defendant there because that's the exception, but that you at least get to talk to the judge. So if we were to do this limited remand, should we make clear that you have that opportunity? Should we leave it to the district court, as some of the other cases have done? How should that be? What would the physics of that look like in our opinion? I know you don't want us to go that way, and we may not, but if we did. If you did, then we would want to have the remand stipulate that the parties have the opportunity to present additional argument or evidence on the impact of the clear error on the ultimate guideline sentence. And so we would, of course, ask the judge in this case to bring the defendant in himself because he did add additional thoughts and arguments. If we're going to do that, then that sure sounds like a resentencing. Because in a resentencing, let's say we just vacate, remand for full resentencing, have a nice day, and that's our opinion. The judge can still give this exact same sentence. You're aware of that. The government's aware of that. No question about that. Would need to analyze it under the correct guidelines and all that, but could still vary or depart upward and get to this same sentence. So how does a limited remand with you and your client there any different from a resentencing remand? And that's why at the end of the day, because of what is going to go on at that hearing, the defendant's presence really is key. The exception that you mentioned, for example, if what we were going to go back and do would be to discuss, is there an error of law in the guideline range, then I could see, no, the defendant doesn't need to be present because we're just going to discuss, is the law applied correctly to the guidelines? But here the district court is by necessity going to be exercising its discretion in a way that it didn't at the first hearing. The district court's going to be addressing factors and weighing them differently. I think everything it seems like you're saying is an argument that Melina Martinez's countenancing of this remedy is just wrong. And obviously we can't say that. I mean, Melina Martinez said this isn't a tool that is available to us to mitigate . . . as the court continues to winnow the various prongs of the plain error standard, this is the way that we mitigate the burden on the district courts. Because obviously every one of these remands doubles the amount of work that the district court has to do on the case, at least. And so I understand what you're saying. It just seems Melina Martinez has already crossed that bridge and said, this is totally lawful, it can be done. And the legal question is, effectively, does this affect the substantial rights of the defendant? Because would you impose the same sentence, right? That's still a legal question for the district court. Right. And at that point, Melina Martinez did offer this as a methodology. It didn't sanction it saying this is the way it should have been done. And I'm saying that in this case . . . And it didn't actually tell us the physics of what on the record meant, did it? No, it did not. Yeah, I referred to the Seventh Circuit, but it didn't say the defendant can't be there, has to be there, might be there, the lawyer should be there physically, or they should just write briefs. I mean, none of that was fleshed out. I think largely because the Supreme Court waits for things to get fleshed out and then addresses them. They don't like to try to just be ahead of the game, which is totally proper. So I'm not sure the Supreme Court has told us what this limited remand looks like. That's why I'm asking so many questions about it. That's correct. And that's why I cited to Adams because that seemed to be the case where the Seventh Circuit has really dealt with this more. And there the Seventh Circuit said it's a remand to correct a plain error from the guidelines and then to reconsider all of the 3553A factors. But the Seventh Circuit opinion openly says we're not going to prescribe procedures for the court to engage in. The district court needs to determine those procedures with the attorneys. And all I'm asking for from this court is to take one step more. So you think then those procedures would be appealable? Yes. So if the judge had said, I don't need squat. I'm just going to rule. And you, the defense counsel, or the U.S. attorney felt those weren't adequate, you could then appeal on the second go-around and say we didn't get the proper procedure, right? Exactly. And in this type of case where there's been an exercise of discretion to increase the sentence, that's a very different procedure than where the court, for example, has stayed within the guidelines. And so simply sending a question back to the district court and asking the district court, would you want to re-sentence now that you know that this guideline has been changed? That's very different because here the court has already exercised its discretion and of necessity it's going to have to do it in a different way. Whereas before the court didn't necessarily do that same analysis and certainly didn't do it in front of the defendant. You have to go up offense levels quite a bit, not just one criminal history category. Yes. So I think that changes it. You've reserved time for rebuttal. Thank you. I appreciate it. May it please the Court. Richard Berry for the United States. Mr. Herman. May it please the Court. If I could, I'd like to put this into a slightly broader factual context. First and foremost, of course, I would respect please submit, and I'm not dodging the question, I would respectfully submit that a remand is not necessary because Mr. Rodriguez-Pena does not satisfy the third or fourth prong of plain error. Assuming that that does not persuade the court, I'm delighted to address the limited remand during the latter part. I guess the hard part to me about that argument on the third prong is the end of the sentencing hearing, which is kind of the moment that you as a judge say, now I'm making my announcement. And that announcement is all tied to the guidelines. I'm going to get out the guideline page, the chart, and I'm going to say criminal history category 3 and good enough. Let's go up one. But deleting the offense level where it is and then saying now that I've got this guideline, I'm going to sentence within it. It's hard to then say the judge just didn't care what the guidelines were in this case. It just blew off the guidelines. It seems hard to do that when that pronouncement moment, which is the moment that everybody sits up in their chair, was all tied to the guidelines. I understand the court's concern. And respectfully, may I put that into context? Sure. There were two sentencing settings, one in September, one in October. At the sentencing, at the setting in September, precisely as you said earlier, Mr. Rodriguez-Pena offered several comments which may or may not have helped his cause. He stated that Judge Hinojosa originally was looking at, he was originally looking at 8 to 14 months and then it went to 27 to 33. And finally, for some unknown reason, it went to 41 months. At the second sentencing in October, he said, I made Judge Hinojosa angry. And that is why he imposed a sentence of 41 months. The fact of the matter is, 41 to 51 was the correctly calculated guideline range at the original 2014 sentencing. And Judge Hinojosa simply imposed a low end of the guideline range sentence. In any event, at the September setting, the defendant and his counsel both noted that he had previously gotten the 41 months from Judge Hinojosa and defense counsel himself mentioned an incremental sentencing, clearly raising the possibility that Judge Crane might be considering increasing the sentence beyond the calculated guideline range of 30 to 37 months. To resolve any doubt, two pages later on page 128, Judge Crane said, point blank, I can vary up or down. And then added, the lowest, you have a serious prior felony sex conviction involving a child, the lowest sentence that I would consider in a case like this is 30 months. Coincidentally, your advisory range is 30 to 37 months. But you got 41 months earlier from Judge Hinojosa and I'm considering higher. I'm considering a higher sentence. I'll consider that and all the other factors at the next sentencing. At the October setting, defense counsel renewed his argument that if Esquivel-Quintana had been decided earlier,  and therefore Judge Hinojosa would have been looking at a lower range. Judge Crane flatly rejected that argument and said in all probability Judge Hinojosa would have either varied or departed upward. Defense counsel grudgingly accepted that. Then the defendant said, I made Judge Hinojosa angry. He went from 8 to 14 up to 41 months. Judge Crane flatly rejected that. And then he said, precisely as in Sanchez-Hernandez, I believe a 41-month sentence, a graduated sentence, you previously got a 41-month sentence and because of your recidivism, I believe a graduated punishment is necessary. You didn't stay out even a year. You're released in January. You're reentered illegally in December. You're back again. I gave you 41. Judge Hinojosa gave you 41. It didn't do any good. At that point, he said, I'm going to depart upward under 4A1.3 because your prior criminal history category understates the seriousness of your prior conduct and it underestimates the likelihood that you'll repeat since this is your third illegal reentry and since you've just completed a 41-month sentence and you're back again. With that setting in mind, he departed upward to 44 months. And I would respectfully submit it's not tied to the guidelines. He had a specific number in mind, the 41 months that Judge Hinojosa had previously imposed. As it turned out, by moving from total offense level 17, history 3, to 17-4, the range went up to 37 to 46 months. There's no reason to necessarily use the guidelines to do that, right? I mean the judge could have just said you had 41. I'm going to give you 44 because it's more than 41. Well, I submit that's exactly what he did, Judge Oldham, just as in Sanchez-Hernandez. But isn't the difference— You got 41 and it wasn't enough. I certainly understand that. But isn't the difference that in this case, as opposed to in Sanchez-Hernandez, the judge takes this additional step that Judge Haynes just mentioned, which is to say the way I'm going to get to 44 is I'm going to use the guidelines criminal history categories. Because that's an unnecessary step, isn't it? Couldn't you just say under 3553A and et cetera, 41 is not enough. I'm going to go to 44. I don't need to adjust the criminal history category to give me the new range and then pick something in the new range. Oh, absolutely, Your Honor. Yes, sir. He could have done that. It's just hard when you're referencing the guidelines to say that the judge didn't consider the guidelines. I mean, if you just read that last two pages—and I understand the rest of it. I certainly understand you very well could have gotten there even knowing what we know now. But those last two pages are all guideline, guideline, guideline, and guideline. And so I understand why you're making the argument you're making, but it's a hard one to make that the guidelines under Molina-Martinez just weren't part of the consideration. I understand that, Your Honor, and I agree with what you're saying. I respectfully submit along the lines Judge Oldham suggests, it wasn't so much that I'm going from 17-3 to 17-4. It's that you're not leaving here with any number lower than 42. But he could have said that and called it a variance. I mean— Oh, he could have, yes. And the court— As well, I just think when you're sitting there straight up doing your pronouncement and you're climbing up the chart, the more you're climbing up the chart, you realize you're climbing up the chart a lot, even if you have this consideration of recidivism and all of that. That's a big climb versus this was a fairly small climb. It was one criminal history to the next. So it was a hill and not a mountain. So let's just say this. Let's assume arguendo that we think prong three might—could be met but are considering this limited remand. Talk to us your view of what I'm calling the physics of the limited remand. What would that look like in terms of actually you're the lawyer, what actually physically happens? If we say limited remand under Molina-Martinez, have a nice day, what happens? The court, I believe, as Mr. Herman suggested, you would need to set out some sort of parameters. Presumably there would be some input from the parties, although obviously that would be something for the court to decide. Does Judge Crane simply sit down in chambers and decide, well, as this court has repeatedly said, a sentence imposed as a variance could easily be—I'm so sorry, as a departure could easily be imposed as a variance under 3553A. Precisely the same sentence, slightly different set of justifications. Does Judge Crane sit down in chambers and decide, well, I'm imposing the same 42-month sentence as a variance under 3553A, and that's the end of it? And if so, or do the parties and perhaps the defendant have a right to be there or need to be there or want to be there? How do you get past 43b-3 that says conference or hearing, which sounds like at least the lawyers are there? Right. And I would agree. I mean, logically it would seem to make the most sense that the lawyers would be there, which would almost of implication mean that the defendant is there since it's now part of the sentencing. So do you see the limited remand as not varying, to use a term, that much from a full resentencing? From a full resentencing, yes, I do see that. So you're not a proponent of the limited remand idea, or are you? In this case, never mind in the world. I am deathly afraid of increasing the workload on our conscientious and dedicated district judges who do an incredible job every single day of the year, as do the judges of this court. No, I'm not at all opposed. Well, I think you'll recall we were the ones reversed in this circuit, reversed in Molina-Martinez. We were showing great respect for our district judges. The Supreme Court had a different view. I appreciate that, since I was the district judge. I didn't know that. I'd forgotten that. Okay, anyway. Our office won that here. Well, there you go. The point being we have that respect, continue to have that respect, and the Supreme Court has that respect, but also has a very great respect for the guidelines and felt that in those circumstances or expressed that in those circumstances, prong three becomes almost presumptively in favor of the defendant, and here we are. So here we are. As Judge Oldham's concurring opinion in Del Carpio-Frescas said, it seems to have compressed both prongs three and four in Molina-Martinez and Rosales-Morales. And both of which were reversed. Were you Rosales-Morales? No. Anyway, both of those were Fifth Circuit cases. I'm painfully well aware. And so are we. And the reality is, look, you're an advocate, and I know as a prosecutor you have special duties that are a little bit different from the typical advocate, but you are an advocate. We're the judges, though, and one thing we all agree on, without a doubt, is we have to follow Supreme Court precedent. And so we are laser-focused on doing that, So, but as Judge Oldham pointed out, Supreme Court's the one that said this thing about the limited remand. So I'm just trying to understand all the pictures. There's the argument that there was no prong three error at all. There's the argument that it's unclear. And then there's the argument that it clearly was a prong three error. And the one in the middle is the one that has the limited remand concept. It is not clear in your mind whether or not there was a prong three error. That's what would generate the limited remand. That's all I'm saying. I'm not saying what was in my mind. I'm saying that's what would generate that. And so that's why I'm trying to get the physics of that. And I believe I agree with everything that you've said. I don't know how. When you start physically putting the pieces together, I don't know exactly how a limited remand would differ from a resentencing other than the fact that all you really want Randy Crane to do is clarify, is this 42 months tied to the guidelines, or is the 42-month sentence the sentence that you would impose if there had never been guidelines? Okay, so you're not a proponent of that in this case, and that's fair. Let me ask you this. What about prong four? Let's assume, arguendo, that we were to conclude that those last two pages of the sentencing hearing really did show that the judge relied on the guidelines sufficient to satisfy the bulk of Molina-Martinez, which is prong three has been met. Then we get to prong four, and we have Rosales-Morales that says, normally you meet the other three in a sentencing guideline error, you're done. What would make this different from that? Well, again, meaning no disrespect, I would start with Judge Oldham's concurring opinion and respectfully submit that, of course, you must follow Rosales-Morales, but it does seem to substantially compress the previous hundred years of Supreme Court jurisprudence on plain error, particularly on prong four. That makes it sound like we've got to find prong four unhappily.  That's what you're saying. Does it call into question the integrity of the judicial system? And Judge Crane said three separate times, and the defense attorney said, he got 41 months from Ricardo Hinojosa. And Judge Crane said, yes, he did, and that wasn't enough, and therefore I, the Honorable Randy Crane, clearly am thinking about giving him something greater, whether it's by resort to the next time. But he did say he'd consider other factors. He did. One of the things that we haven't talked about is Mr. Rodriguez-Payne is saying he came back to see his kids and a small discussion of the kids. So this is a different kind of offense in terms of recidivism. It's not like he's beat somebody up and then now he's attacked somebody again and that kind of thing. So it's still a crime, and I'm not detracting from that in any way. I just think it's a little bit different of a crime than some of the other recidivism cases. And so the judge would have been entitled and would and should consider all of those factors, and one of the factors you should and can and must consider is the guidelines. And I certainly don't have the experience of my colleague to the left in doing sentencing, but I have done some. I've sat as a district judge, and the guidelines are very important. They may not be dispositive, but they are very important and should be. You said that loudly and extremely clearly. Well, I'm not entirely sure it's extremely clear. In 2005 in Booker they were advisory, and in 2014 you must calculate them correctly. I'm not exactly sure how advisory and must are reconciled, but that's a whole different issue for another day. And I would respectfully assume that Judge Crane did consider that. Rodriguez-Pena's need to come back to be with his children, his repeated minimization and his contesting the facts of his assault of his cousin, the fact that he returned in less than a year after he was released, and of course the fact that it was his third illegal reentry and the fact that he had gotten 41 months, served it, been released, been deported, and came back within a year, all of which Judge Crane took into consideration and decided that something beyond 41 months was absolutely necessary. In terms of remand, there's either remand with a hearing or sending a specific question to the judge. The Billion case in the Seventh Circuit, which is discussed in some of the other Seventh Circuit cases, there was a curious miscalculation in the PSR. The probation officer used a one pound equals 2.2 kilos instead of the other way around, and that increased Mr. Billion's range, offense level by two, which increased his range of sentence. Judge Easterbrook sent it back with a simple question, did this impact the sentence? The judge said, yes, it did. They vacated the sentence and sent it back. In Gomez, there was a legal question this court asked, do you understand that you could depart a drug and gun case? Two drug counts, two firearms counts, they all had mandatory minimums. In this case, the mandatory minimum was a total of 40 years, and the judge ultimately imposed a sentence of almost 60 years and said that was essentially the low end of the advisory guideline range for the drugs in excess of the mandatory minimum sentence, and this court said under the Supreme Court opinion in Dean, you have discretion to alter the non-mandatory minimum. The mandatory minimum is the mandatory minimum, and you have to impose a sentence of at least 480 months, but you don't have to necessarily exceed that if you feel that it is excessive, and the district judge had said I'm imposing a sentence of I believe it's 652 months, and I find that to be excessive, and so this court said you can drop that down to 40 years and a day, which is different from this case. This is a slightly nuanced legal question. Would it be fair to sum up that if we end up disagreeing with you that prong three is clearly not met, that you would think a resentencing is the right way to go, just send it back and be done? If prong three, yes, ma'am. Right. If it needs to go back. If it is clear that it is substantially affected. That's a better way to put it because it's a double negative. Sure, sure, sure, sure. If it needs to go back, it needs to go back. I think the question is, is the position of the United States that if we find prong three and four met, as between the remedies of the limited remand that Melina Martinez suggests and a full resentencing, what is the position of the United States as between those two choices? Did I get that right? That's a better way to put it. I'm tempted to take the coward's way out and say I'm delighted to leave that to the sound judicial discretion of this learned court. Quite frankly, precisely as you have suggested, Judge Hines, I don't know that there's a big difference in practice. You'd be fine with the full resentencing in that situation, but you'd rather that we say prong three was you did not, you, the defendant, didn't show an effect on the substantial rights? Yes, Your Honor. Okay. And, again, depending on the limited remand, if it's something like a mathematical error, one pound is 2.2 kilos, then you can simply send a note to the judge. Theoretically, you could send a note. In this case, it would probably be a longer note. Pounds and kilos. Right. Fair enough. Okay. Thank you, counsel. Appreciate your honesty. Thank you. Just briefly in rebuttal, Your Honor. You want to deal with the 41-41, 41-41, because that seems to be the strongest argument for the government. Certainly. And, once again, I go back to those same cases I mentioned before, Wickerink and certainly Perez Mateo. This court, in those cases, made it clear that when the court has focused on several factors in the sentencing, that if the court is still tying the sentence to the guideline range, then it is a guideline-based sentence. And under Molina-Martinez, we've met the third prong of plain error review. Those cases are clear on that because in each of those cases, and particularly Sanchez-Arvizu, the district courts went through 3553A factors as well. And this district court, in this case, made clear that he was focusing on a number of different factors. I would contrast that with cases where the court has found that we've not met the third prong, and that would be Nino Carreon. In that case, the district court, just as you suggested, Judge Oldham, did not mention a 4A1.3 departure to structure what it was doing. Instead, it cited the guidelines and then said, now, under 3553, I'm going to impose a different sentence, and then justified that sentence of 50 months, totally apart from any guideline range. Which did not happen here. Which did not happen here. I don't think the government's even saying it happened here. Correct. So those are two very distinct ways of doing it, and the district court here just simply did it in that other way. I guess my issue why I was saying it was a double negative is I feel like Molina-Martinez has created a presumption that the defendant has met prong 3 when there's a guideline error, and it's almost up to the government to kind of rebut that. They didn't quite put it that way, but that's kind of where I was going with that. Just to clarify, because I realize the language I used was kind of confusing. Yes, Your Honor. And on the fourth prong, Urbina-Fuentes and Perez-Matteo both deal with a lot of what the district court cited, which is criminal history and deportations. Both of those cases, this court has said that those types of considerations are appropriate, of course, for the judge at the district court level to consider in setting the sentence, but they're not countervailing factors under Rosales-Morales. They're not for this court to consider. Well, and his recidivism wasn't he didn't attack another child. Yes. So I think that's what I was discussing with your opponent. Anything else you want to tell us on this? I mean, I'm not trying to cut you off, but I don't want to repeat. Your Honor, just on the format of the limited remand. Okay. In this type of case, the defendant's presence is really key, once again, because the resetting of the guideline has changed the whole method for calibrating the appropriateness of a departure and the degree of that departure. So his presence really is needed to validate all of those interests that you yourself identified, including his constitutional right to be present at sentencing. I can agree to a number of things to work out with the judge and the prosecutor present in terms of legal points, but I, as his attorney, can't give up that constitutional right for him or the other statutory or rule-based rights to be present at sentencing. And we can look at other cases where this court has had to deal with on appeal the issue of whether the defendant had a right to be present. Where is he being held in relation to where this courtroom is? Your Honor, I have to admit I'm not sure. I believe it's quite a distance. There's no place around the McAllen area where our defendants are currently held. The closest place he could be is at Three Rivers, which is two and a half to three hours away. I have a feeling he's a bit farther than that, but I really can't tell you. He could be in Minnesota. Here's what I don't understand about the constitutional right to be present at sentencing. He was present at sentencing. He was. When the judge said you get 44 months. So it seems like all of those rights, whether constitutional, statutory, or rule-based, have been satisfied, which is why Molina-Martinez can say the courts of appeals can just ask the judge, would you stick with 44? And if the judge says yes, hypothetically, then all of the various legal requirements associated with at least the right to be present have been satisfied. I realize you have other arguments about why it would still be an abuse of discretion or whatever. And these are not cases that are cited in our briefs, but there's a recent case, 2016, I believe, from this court, Clark, that dealt with the defendant's right to be present. I can give you that site if I might step away for a second. But in Clark, this court went through when is a defendant required to be present at resentencing. And generally the rule from that is when the sentence is going to be reimposed or reconsidered in a different way that could be more onerous, then the defendant has a right to be present. When it's just a correction of the judgment, the elimination, I believe in that case it was the elimination of one count that had no other impact on that defendant, then the defendant didn't have a right to be present. So this point has been litigated. But as we're sitting here today, he's serving a 44-month sentence. He is. And so if the judge decides just to adhere, then there's not one single day added, not one single condition of supervised release added, certainly no burden at all that would presumably not trigger any of the things in Clark or the Constitution or the rules, I would suppose. Except for the fact that at this resentencing, the district court is imposing a new sentence based on AOL guidelines, in which it's taking into account all of these other statutory requirements. And so our argument on the next appeal would simply be that the requirements of Clark, the requirements for a defendant's presence at resentencing when the district court is exercising the discretion all over again, that those haven't been met. And so in this case, simply to avoid the necessity of further appeal, if what you're looking for is judicial efficiency, it's more efficient simply to resentence him in a complete manner. Well, the government agreed with you on that. The phrase on the record to me, I understand that maybe that can encompass the judge writing an opinion, but maybe this is my state court roots. On the record seems to me to be like right now is on the record. But I suppose it's on the record when you write something and put it in the record. So I don't know. I don't know what the Supreme Court meant by that. And it doesn't seem like that was the focus of that case or of their discussion. So I'm not sure we know exactly what the Supreme Court would do with this physics question if it were a direct presented cert question. And we know it will probably come from the Fifth Circuit. Thank you. Thank you. Thank you to both sides. We appreciate a very interesting argument. And the case is under submission.